IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| FELLOWSHIP FILTERING TECHNOLOGIES, LLC, § § § *Plaintiff*, § § v. § § ALIBABA.COM, INC., ET AL., § § § *Defendants*. § | CASE NO. 2:15-cv-2049-JRG |

## ORDER

Before the Court is Defendant Alibaba.com, Inc.'s Motion to Dismiss for Lack of Personal Jurisdiction and Improper Venue or, in the Alternative, to Transfer (Dkt. No. 12). The Court held an evidentiary hearing and heard oral argument on the motion on August 24, 2016, during which Declarant Michael Lee presented live testimony on behalf of Alibaba.com, Inc. After considering the briefing and evidence, the Court finds that Alibaba.com, Inc.'s Motion to Dismiss for Lack of Personal Jurisdiction should be **GRANTED**.

### I. BACKGROUND

On December 3, 2015, Plaintiff Fellowship Filtering Technologies, LLC ("Fellowship Filtering") filed the present suit alleging that Alibaba.com, Inc., along with ten other named defendants, infringed U.S. Patent No. 5,884,282 ("the '282 patent") by "making, using, offering for sale, and/or selling collaborative filtering products and services" in the operation of certain websites, including www.taobao.com, www.aliexpress.com, www.aliyun.com, and www.alibaba.com ("the Alibaba websites"). (Dkt. No. 1 ¶ 215). To date, Alibaba.com, Inc. remains the only defendant in the suit that Fellowship Filtering has served. (Dkt. No. 5).

Following service, Alibaba.com, Inc. filed its motion to dismiss asserting that it is not subject to personal jurisdiction in Texas. The parties stipulated that Alibaba.com, Inc. is incorporated in Delaware and does not have a physical office in Texas. (Dkt. No. 51-3). Instead, Alibaba.com, Inc. maintains its headquarters in San Mateo, California, and "[a]ll of Alibaba.com, Inc.'s employees are either based in its San Mateo, California office or spend some portion of their time working out of that office." (Dkt. 12-6 ¶¶ 3–4). Alibaba.com, Inc. asserts that it does not operate any of the Alibaba websites alleged to infringe the '282 patent. (*Id.* ¶ 5). Rather, Alibaba.com, Inc. argues that it is a marketing company, existing solely for the purpose of promoting the Alibaba websites in the United States generally. (*Id.*).

In response, Fellowship Filtering asserts that Alibaba.com, Inc. is subject to specific personal jurisdiction in Texas because of both its own actions and the actions of the "Alibaba Group."[1] (Dkt. No. 25 p. 12–15). Fellowship Filtering seeks to impute the contacts of the "Alibaba Group" to Alibaba.com, Inc. under theories of agency and alter ego. (*Id.* at p. 12).

## II.   LEGAL STANDARD

### A.   Specific Personal Jurisdiction

Whether a defendant is subject to specific personal jurisdiction in an action involves two inquiries: (1) whether the forum state's long arm statute permits service of process, and (2) whether the assertion of jurisdiction is consistent with due process. *Celgard, LLC v. SK Innovation Co., Ltd.*, 792 F.3d 1373, 1377 (Fed. Cir. 2015). Federal courts follow state law in determining the extent to which the state's long arm statute permits personal jurisdiction. *Daimler AG v. Bauman*, 134 S. Ct. 746, 753 (2014). The Texas Supreme Court has held that "the broad language of the long-arm statute's doing business requirement allows the statute to reach

---

[1] Throughout briefing, Fellowship Filtering uses the term "Alibaba Group" to refer to the entity or group of entities whose contacts it seeks to impute to Alibaba.com, Inc. This term might refer to Alibaba Group Holding Limited. However, Fellowship Filtering failed to specifically elucidate which entities comprise the "Alibaba Group."

as far as the federal constitution permits." *Schlobohm v. Schapiro*, 784 S.W.2d 355, 357 (Tex. 1990). Therefore, the personal jurisdiction analysis for a federal court in Texas collapses into one inquiry: whether the court's exercise of personal jurisdiction over a non-resident defendant comports with the Due Process Clause of the Fourteenth Amendment. *See Inamed Corp. v. Kuzmak*, 249 F.3d 1356, 1360 (Fed. Cir. 2001).

The Due Process Clause allows a court to exercise personal jurisdiction over a non-resident defendant with "certain minimum contacts . . . such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). The specific jurisdiction analysis "focuses on the 'relationship among the defendant, the forum, and the litigation.'" *Walden v. Fiore*, 134 S. Ct. 1115, 1121 (2014) (quoting *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 775 (1984)).

For patent cases, the due process elements of personal jurisdiction are governed by Federal Circuit law. *Accorda Therapeutics Inc. v. Mylan Pharms. Inc.*, 817 F.3d 755, 759 (Fed. Cir. 2016). The Federal Circuit has created the following three-prong test to determine whether a court can exercise specific jurisdiction over a non-resident defendant in a patent infringement case: (1) whether the defendant purposefully directed activities at residents of the forum; (2) whether the claim arises out of or relates to those activities; and (3) whether the assertion of personal jurisdiction is reasonable and fair. *Nuance Commc'ns, Inc. v. Abbyy Software House*, 626 F.3d 1222, 1231 (Fed. Cir. 2010).

The plaintiff bears the burden of affirmatively establishing the first two elements of the three-prong due process requirement. *Celgard*, 792 F.3d at 1378. Where the court has not held an evidentiary hearing on jurisdiction or permitted the parties to conduct jurisdictional discovery, the plaintiff bears a prima facie burden to establish the first two elements. *Id.* However, where

the parties have conducted jurisdictional discovery and the court has held an evidentiary hearing, as here, the plaintiff must establish the first two elements of such test by a preponderance of the evidence. *See id.* (citing *Pieczenik v. Dyax Corp.*, 265 F.3d 1329, 1334 (Fed. Cir. 2001)); *see also Taishan Gypsum Co. v. Gross (In re Chinese-Manufactured Drywall Products Liability Litgation)*, 753 F.3d 521, 529 (5th Cir. 2014); *Grayson v. Anderson*, 816 F.3d 262, 268 (4th Cir. 2016).

B.  **Imputing Contacts of a Third Party to Defendant for Purposes of Specific Personal Jurisdiction**

It is possible for a third party's contacts with the forum to be imputed to a named defendant to establish specific personal jurisdiction under either an agency or alter ego theory. *Celgard*, 792 F.3d at 1379. To impute the contacts of a third party to the defendant under an agency theory, the defendant must exercise control over the third party's activities in the forum by "directing its agents or distributors to take action there." *Daimler*, 134 S. Ct. at 759 n.13. For an agency relationship to permit imputation of contacts, the parent company's control over the agent must pervade the agent's dealings with the forum. *Taishan Gypsum Co.*, 753 F.3d at 532. To impute the contacts of a third party to the defendant under an alter ego theory, the lines between the defendant and the third party must become "so blurred that the two become one." *See QR Spex, Inc. v. Motorola, Inc.*, 507 F. Supp. 2d 650, 663 (E.D. Tex. 2007). As a general matter, the corporate form should not be lightly disregarded. *See Manville Sales Corp. v. Paramount Sys. Inc.*, 917 F.2d 544, 552 (Fed. Cir. 1990). As a result, the typical corporate relationship between a parent and subsidiary, including one hundred percent stock ownership and identity of directors and officers, is not a sufficient basis to impute the contacts of a third party to the defendant under an alter ego theory. *See QR Spex, Inc.*, 507 F. Supp. 2d at 663 (citing *Gardemal v. Westin Hotel Co.*, 186 F.3d 588, 594 (5th Cir. 1999)).

Importantly, under both agency and alter ego theories, personal jurisdiction cannot be exercised over a defendant on the basis of unilateral acts of third parties. *Celgard*, 792 F.3d at 1380 (citing *Hanson v. Denckla*, 357 U.S. 235, 253–54 (1958)). Even under a theory of imputed contacts, the defendant must "deliberately . . . engage[] in significant activities within a State" in order for exercise of personal jurisdiction to comport with due process. *See Nuance Commc'ns, Inc.*, 626 F.3d at 1232 (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)).

## III. ANALYSIS

Alibaba.com, Inc. argues that Fellowship Filtering has failed to meet its burden to establish that Texas has personal jurisdiction over Alibaba.com, Inc. because Alibaba.com, Inc.'s own actions do not give rise to personal jurisdiction and because the contacts of the "Alibaba Group" should not be imputed to it. The Court agrees.

### A.   Alibaba.com, Inc.'s Own Actions Do No Give Rise to Personal Jurisdiction

Texas lacks personal jurisdiction over Alibaba.com, Inc. because there is no evidence that Alibaba.com, Inc. has purposefully directed activities at Texas residents. In response to the instant motion, Fellowship Filtering alleges that Alibaba.com, Inc. purposefully directed activities to Texas by: "(1) entering into commercial partnerships with Texas-based companies; (2) having the General Manager of Alibaba.com, Inc. come to Texas to speak on the company's business model; (3) promoting websites such as Alibaba.com, Inc. to an audience in Texas and throughout the United States; (4) and targeting U.S. Suppliers to list products on the Alibaba website." (Dkt. No. 25 at 15). However, the evidence presented by Fellowship Filtering has failed to support these allegations.

Regarding the first allegation, Fellowship Filtering relied on a press release announcing a partnership between Alibaba.com and Bigcommerce. (Dkt. 25-14). However, Fellowship

Filtering was unable to demonstrate that Bigcommerce was a Texas-based company or that the partnership announced by the press release was between Alibaba.com, *Inc*. (as opposed to some other entity affiliated with Alibaba.com) and Bigcommerce. Moreover, Michael Lee, Alibaba.com, Inc.'s former Director of International Business Development and Marketing, testified that during his time with Alibaba.com, Inc. (dating back to 2011), it had never partnered with a Texas-based entity. (Dkt. No. 32-2 at 72–73). In response, Fellowship Filtering failed to demonstrate that Alibaba.com, Inc. entered into commercial partnerships with any Texas-chartered or Texas-based companies.

Regarding its second allegation, Fellowship Filtering relies on a press release announcing that the General Manger of Alibaba.com would be speaking at the Promotional Products Association International conference in August of 2011. (Dkt. No. 25-15). The first line of this press release, however, expressly indicates that the conference was held in Denver, Colorado. At the recent hearing, Fellowship Filtering offered no evidence to the contrary. Even though there is an insinuation that Alibaba.com might be the same as Alibaba.com, Inc. (though no proof of same was produced), the conference cited to took place well outside of Texas. As a result, there is no evidence before the Court that an employee of Alibaba.com, Inc. has ever spoken at a conference in Texas.

Regarding the third and fourth allegations made by Fellowship Filtering, there is no evidence demonstrating that Alibaba.com, Inc. purposefully directed any marketing or promotional activities specifically to or within the State of Texas. In fact, Alibaba.com, Inc. offered direct evidence to the contrary. The marketing activities conducted by Alibaba.com, Inc. consist of "offline" events, such as trade shows, conferences, and "private meet-up events." (Dkt. No. 32-2 at 35). According to the testimony of Michael Lee, Alibaba.com, Inc. has not

participated in offline marketing events in Texas during his tenure with the company (dating back to 2011). (Dkt. No. 32-2 at 35–36). In its briefing and at the evidentiary hearing, Fellowship Filtering presented no evidence to overcome this testimony. Accordingly, Fellowship Filtering has failed to carry its burden to demonstrate that Alibaba.com, Inc. has purposefully directed any activities at Texas residents.

**B.     The Contacts of the "Alibaba Group" Should Not Be Imputed to Alibaba.com, Inc.**

Additionally, Fellowship Filtering has failed to present evidence that the contacts of the "Alibaba Group" should be imputed to Alibaba.com, Inc., either under an agency or alter ego theory.

In support of its argument that the contacts of the "Alibaba Group" should be imputed to Alibaba.com, Inc., Fellowship Filtering alleges that: (1) assets were transferred between Alibaba.com, Inc. and the "Alibaba Group" for no agreed-to consideration; (2) Alibaba.com, Inc. and the "Alibaba Group" shared the same controlling member; (3) the "Alibaba Group" maintained approval authority over any business partnership of Alibaba.com, Inc.; (4) the "Alibaba Group" approved budget requests made by Alibaba.com, Inc.; (5) the "Alibaba Group" holds out Alibaba.com, Inc. as being part of a tightly integrated "Alibaba Group"; (6) Alibaba.com, Inc. employees gave presentations in which they identified themselves as being part of the "Alibaba Group"; (7) the Alibaba entities operate as a single unit and each of the Alibaba entities act as an agent of the other Alibaba entities; and (8) the "Alibaba Group" exercises control over Alibaba.com, Inc. (Dkt. No. 25 at 13–14).

The evidence Fellowship Filtering relies on to support these allegations demonstrates nothing more than a typical parent-subsidiary corporate relationship. *See QR Spex, Inc.*, 507 F. Supp. 2d at 663. For example, Fellowship Filtering points to a California Competes Tax Credit

Allocation Agreement which was executed by a single employee (identified as a "director") on behalf of Alibaba.com, Inc., Alipay US, Inc., Nimbus Development, Inc., and 11 Main, Inc. as evidence that Alibaba.com, Inc. and the "Alibaba Group" shared the same controlling member. However, identity of officers and directors, even coupled with other indicia of alter ego status, is not a sufficient basis to impute contacts of a third party to the defendant. *Id.* Additionally, Fellowship Filtering relies on deposition testimony from Michael Lee that indicates other entities review certain decisions made by Alibaba.com, Inc. as evidence that the "Alibaba Group" exercises control over Alibaba.com, Inc. In further support of this position, Fellowship Filtering points to statements in SEC filings indicating that various Alibaba entities have contractual relationships enabling "effective control" over one another. However, the fact that a parent company may exercise some degree of control over its subsidiaries does not demonstrate that the corporate form should be disregarded for purposes of personal jurisdiction. *Id.* Indeed, review of certain budget requests or potential business partnerships pursuant to a contractual agreement does not demonstrate "parental control" that "pervades" the agent's dealings with Texas. *See Taishan Gypsum Co.*, 753 F.3d at 532.[2]

Fellowship Filtering also points to statements made in SEC filings that various Alibaba entities are majority-owned by the majority shareholder of Alibaba Group Holding Limited. However, as noted above, even one hundred percent ownership of a subsidiary is not a sufficient basis to disregard the corporate form. *QR Spex, Inc.*, 507 F. Supp. 2d at 663. Fellowship Filtering also relies on broad, sweeping statements made in various SEC filings indicating that the Alibaba

---

[2] This set of facts turns the traditional theory of imputed contacts on its head. Rather than seeking to impute the contacts of a domestic subsidiary to a foreign parent, Fellowship Filtering is seeking to impute the contacts of the foreign parent, over which the subsidiary has no control, to the domestic subsidiary. There is no evidence of an attempt by Alibaba.com, Inc. to purposefully direct or control the activities of the "Alibaba Group" in Texas (to the extent any Texas activities may or may not exist). *See Celgard*, 792 F.3d at 1379. This is not to say that imputing the parent's contacts to the subsidiary is always inappropriate, but there must be some deliberate action on behalf of the subsidiary such that imputing those contacts to the parent is consistent with traditional notions of due process. *See id.* at 1380.

entities are "closely integrated" as evidence that Alibaba.com, Inc. is the alter ego of the "Alibaba Group." However, such conclusory statements, without more, do not counsel in favor of disregarding the corporate form. *See Panda Brandywine Corp. v. Potomac Elec. Power Co.*, 253 F.3d 865, 869 (5th Cir. 2001) (holding that the court is not required to credit conclusory allegations, even if uncontroverted).

The evidence presented fails to demonstrate that the "Alibaba Group" is either the agent or the alter ego of Alibaba.com, Inc. The contacts of the "Alibaba Group" may not, in these circumstances, be imputed for personal jurisdiction to Alibaba.com, Inc. Fellowship Filtering has not carried its burden to prove that Alibaba.com, Inc. purposefully availed itself of the benefits of Texas by directing its agents or distributors to take action here, *see Daimler*, 134 S. Ct. at 759 n.13, or that the lines between Alibaba.com, Inc. and the "Alibaba Group" have become so blurred that the two have become one. *See QR Spex, Inc.*, 507 F. Supp. 2d at 663.

## IV.   CONCLUSION

For the reasons stated above, Defendant's Motion to Dismiss for Lack of Personal Jurisdiction (Dkt. No. 12) is **GRANTED**, and Fellowship Filtering's action against Alibaba.com, Inc. is **DISMISSED WITHOUT PREJUDICE**. Since the Court herein grants Alibaba.com, Inc.'s Motion to Dismiss for Lack of Personal Jurisdiction, it need not address the merits of Alibaba.com, Inc.'s Motion to Dismiss for Improper Venue or its Motion to Transfer Venue, and the motion before the Court in such respects is **DENIED AS MOOT**.

**So Ordered this**

**Aug 31, 2016**

_____
RODNEY GILSTRAP
UNITED STATES DISTRICT JUDGE